No. 88-482

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989


EARL W. ROADARMEL,

        Claimant and Respondent,

   -vs-

ACME CONCRETE COMPANY,
        Employer,

   -vs-

ROYAL INSURANCE COMPANY,

        Defendant and Appellant.


APPEAL FROM: The Workers' Compensation Court, The Honorable
Timothy Reardon, Judge Presiding.

COUNSEL OF RECORD:

    For Appellant:

        James G. Edmiston, III; Billings, Montana

    For Respondent:

        Donald E. White; Bozeman, Montana
        W. Lee Stokes; Bozeman, Montana


Submitted on Briefs: February 16, 1989

Decided: April 25, 1989

Filed:

_____
Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

Royal Insurance Company appeals from a judgment entered against it and in favor of claimant Earl W. Roadarmel in the Workers' Compensation Court of the state of Montana, in and for the area of Butte. The court held that Roadarmel sustained a compensable injury under § 39-71-119, MCA, on September 18, 1986 and was entitled to temporary total disability benefits and medical benefits through December, 1987. Future entitlement to benefits after that date was not determined by the court. The court also awarded Roadarmel reasonable costs and attorney fees pursuant to § 39-71-611, MCA. The insurer appeals from the judgment. We affirm.

Appellant Royal Insurance Company presents the following issues for review:

(1) Whether claimant proved, by a preponderance of the probative credible medical evidence (all of which was submitted by deposition) that his cardiac arrythmia (irregular heartbeats) were caused by an on-the-job exposure to the chemical Toluene.

(2) Whether claimant proved by a preponderance of the probative credible medical evidence (all of which was submitted by deposition) that he was totally disabled as a result of exposure to the chemical Toluene from September 18, 1986 through December, 1987.

(3) Whether the Workers' Compensation Court erred by admitting into evidence over Defendant's objection articles from medical journals and treatises as exhibits.

(4) Whether the Workers' Compensation Court erred in determining that claimant's witness, Samuel J. Rogers, Ph.D. qualified as an expert witness over defendant's objection.

Roadarmel disagrees with Royal's statement of issues (1) and (2) and frames those issues as follows:

(1) Whether the claimant proved by a preponderance of the evidence that he sustained an injury as a result of his employment with Acme Concrete Company.

(2) Whether the claimant proved by a preponderance of the evidence that he was totally disabled as a result of an injury suffered during the course of his employment with Acme Concrete Company.

Acme is enrolled in Compensation Plan II of the Montana Workers' Compensation Act and is insured by Royal Insurance Company, the appellant.

The facts from which this claim arose are as follows: Earl Roadarmel was employed by Acme as a heavy equipment operator. He had worked on highway construction steadily since 1954. At the time of this injury he was 58 years old and in good health. Roadarmel was assigned the job of operating the curing bridge that sprayed a curing agent onto the newly-laid concrete highway. The machine bridged the entire width of the highway (40 to 50 feet) and was equipped with a hundred or more spray nozzles that sprayed the curing agent, a wax/resin, onto the cement. The nozzles plugged continuously because the curing agent was not liquid as it was supposed to be, but had solidified into a gel. To remedy the persistent plugging, Roadarmel had to get out of the cab, reach under the machine, unscrew the plugs, and unplug them by placing them in Toluene, a toxic chemical solvent. He would then wash off the nozzles and replace them and spray the cement until the nozzles needed to be unplugged again. At night, he removed each nozzle, washed it in Toluene and then replaced it the following morning. When he used the Toluene, it was not in its original barrel, but in a bucket which was refilled by a mechanic whenever Roadarmel

needed more of it. Roadarmel was unaware that he was exposing himself to a virulent, toxic chemical. He did see the empty Toluene barrels in a heap with other barrels, but he did not see a warning on the barrels as to its toxicity. No one at Acme informed him of the danger he was being exposed to nor did anyone suggest that he wear protective clothing or a respirator to protect from inhaling the solvent.

There was a Material Safety Data Sheet concerning the Toluene provided to Acme by Exxon, the manufacturer, but not disclosed to Roadarmel. It contained the following language:

A.  Identification and Emergency Information
. . . Product Appearance and Odor

Clear water-white liquid.    Aromatic hydrocarbon odor.

B.  Components and Hazard Information

. . . Exposure limit for total product 100 ppm (378 mg/m3) for an 8-hour workday.

. . . Approximate Concentration 100%

C.  Emergency and First Aid Procedures
Eye Contact

If splashed into the eyes, flush with clear water for 15 minutes or until irritation subsides. If irritation persists, call a physician.

Skin Contact

In case of skin contact, remove any contaminated clothing and wash skin thoroughly with soap and water.

Inhalation

If overcome by vapor, remove from exposure and call a physician immediately. If breathing is irregular or has stopped, start resuscitation, administer oxygen, if available.

E.  Health and Hazard Information Variability Among
Individuals.

Health Studies have shown that many petroleum
hydrocarbons and synthetic lubricants pose
potential human health risks which may vary from
person to person.  As a precaution, exposure to
liquids, vapors, mists or fumes should be
minimized.

Effects of Overexposure (signs and symptoms of
exposure)

High vapor concentrations (greater than
approximately 1000 ppm) are irritating to the eyes
and the respiratory tract, may cause headaches and
dizziness, are anesthetic and may have other
central nervous system effects.

Nature of Hazard

Prolonged or repeated skin contact with this
product tends to remove skin oils possibly leading
to irritation and dermatitis.

Product contacting the eyes may cause eye
irritation.

No one gave Roadarmel any directions or warnings about
the Toluene.  Each day for seventeen days, a total of 177
hours, Roadarmel breathed the chemical.  His sweatshirt and
clothes were soaked with it by the end of the day.  On one
occasion, he placed the rag on which he wiped his hands into
his back pocket.  About half an hour later he felt the rag
"burning back there."  He had a sense at that time that it
was "powerful."  His work-toughened hands, accustomed to
strenuous construction work, were no longer sensitive enough
to feel the burning, but his sensitive buttocks area felt the
burning sensation.  After that realization, Roadarmel tried
to keep his hands washed.  This was almost impossible to do
because there was seldom water on the site and the wax/resin
covered everything.  The curing bridge, which Roadarmel

operated, worked just behind the finish crew. If Roadarmel got up close to that crew, they would tell him to get back because "it was too stinky for them." However Roadarmel, who was in the smell all the time, really did not notice the smell and the fumes.

Another Acme employee, Glen Lingjerde testified that he worked on the Butte project and in Superior. He worked with the Toluene for about four weeks. Roadarmel took over Lingjerde's job when he quit because of the effect the Toluene was having on him. Lingjerde also received no warnings and was not instructed to take precautionary measures with the solvent. He testified by deposition that prior to working on the curing bridge he had been in the best shape he'd ever been in, lifting weights several times a week and running several miles. He lost his appetite and went from 195 to 165 pounds. He suffered severe headaches, was sick to his stomach, experienced dizziness and light headedness when he worked with the Toluene. It became apparent to him, from the pattern of his headaches and dizziness, that his time spent on the curing bridge brought on these symptoms. On one particular day, Lingjerde had been much exposed to Toluene. On the drive home he spit out the car window. The spittle hit the side of his new Burgundy car. Later, when he wiped it off, the paint had been removed by the spittle. Lingjerde additionally testified that he had seen a Toluene barrel at Superior on which there was a warning that if the solvent came into contact with the skin, it must be flushed immediately. But, he said, there was no way to do this because "you get covered with the stuff" and there was no water on the site to wash with. Lingjerde then quit. His weight returned to normal and his headaches eventually stopped. He spit up for quite awhile afterward and could taste the Toluene.

About the last week of the curing job, September 18, 1986, Roadarmel became dizzy and light-headed. At night when he went to bed, "it seemed like [his] whole body was jumping" and often he could not sleep. About two weeks after the job was finished he went to the doctor in Whitehall because he did not feel well and his wife, who is an emergency medical technician, was unable to find his pulse. The doctor prescribed a medication, but the next day his heartbeat was even more rapid. The Whitehall doctor was out of town so Roadarmel went to the emergency room of a Bozeman hospital. The doctor there cardioverted respondent's heart with electric shock to return it to a normal heartbeat. Since that time, Roadarmel has been on various medications and has undergone additional cardioversion.

Royal Insurance's contention is that Roadarmel's symptoms are not a result of his exposure to Toluene but are psychosomatic and a result of "cardiac neurosis" caused by "non-conventional" physicians. Royal claims that the "non-conventional" physicians whom Roadarmel consulted were the only doctors who testified that Roadarmel's irregular heartbeat was caused by chemical exposure resulting in total disability.

Section 39-71-119, MCA (1985), defines "injury" or "injured" as

> (1) a <u>tangible happening</u> of a traumatic nature from an <u>unexpected cause</u> or unusual strain resulting in either external or internal physical harm and such physical condition as a result therefrom and excluding disease not traceable to injury, except as provided in subsection (2) of this section;

> (2) . . . Nothing herein shall be construed to exclude any other working person who suffers a <u>cardiovascular</u>, pulmonary, or respiratory disease while in the course and scope of his employment. (Emphasis added.)

The medical evidence is that Roadarmel has become "sensitized" and will have a reaction whenever he encounters hydrocarbons, which could be while pumping gas, inhaling exhaust fumes, or simply encountering hydrocarbons which are profuse in the environment. It is possible that the arrythmias he experiences upon exposure could be fatal. He would not be able to work in the construction business again unless he wears a portable respirator.

The standard of review for decisions of the Workers' Compensation Court is whether there was substantial credible evidence to support the decision of the court. Shupert v. Anaconda Aluminum Co. (1985), 215 Mont. 182, 697 P.2d 436. However, where critical medical evidence is entered by deposition, this Court, although sitting in review, is in as good a position as the Workers' Compensation Court to judge the weight of the testimony, as distinguished from oral testimony, where the trial court actually observes the character and demeanor of the witness on the stand. Brown v. State Compensation Ins. Fund (Mont. 1988), 752 P.2d 171, 45 St.Rep. 508; Shupert v. Anaconda Aluminum Co. (1985), 215 Mont. 182, 188, 696 P.2d 436, 439; Hert v. J. J. Newberry Co. (1978), 178 Mont. 355, 360, 584 P.2d 656, 659.

A close scrutiny by this Court of the medical experts' testimony contained in various depositions sustains the Workers' Compensation Court's decision that respondent's exposure to Toluene rendered respondent chemical-sensitive. Roadarmel experienced dizziness, rapid heart rate, fainting and lightheadedness. He was treated by Whitehall and Bozeman physicians who were unable to control the cardiac arrythmias. He then saw medical doctors in Dallas, Denver, and Seattle. Each parties' counsel has been able to cull from those experts' depositions phrases which support their relative stances. However, the preponderance of the evidence shows

that there is a magnitude of medical research and clinical research that demonstrates that Toluene causes the symptoms Roadarmel is experiencing. Much of the clinical data referred to by the experts concerns glue sniffers who suffer all of respondent's symptoms in addition to memory loss. Glue contains Toluene.

Curt Kurtz, M.D., a 1962 graduate of Stritch Medical School in Chicago testified that it would be dangerous for Roadarmel to return to his occupation as a heavy equipment operator or to expose himself further to Toluene or similar solvents.

Samuel J. Rogers, Ph.D., an associate professor of chemistry at Montana State University, who teaches courses in biochemistry and toxicology explained the Poison Index Substance Information offered into evidence by Kenneth Kulig, M.D. Rogers said that Toluene invades an organ and disrupts the tissue structure . . . in this case, probably the nervous system of the heart, and at that point, the tissue becomes more susceptible and sensitized to chemicals such as Toluene, solvents or adrenaline. The tissue is no longer able to withstand certain kinds of solvents and becomes sensitized. It reacts in an improper fashion to a normal cardiac stimulant like adrenaline.

William J. Daniell, M.D. testified that ventricular arrythmias are of particular concern because of risk of sudden death. Atrial arrythmias are of less potential, far less potential, for causing such death; but can be associated with transient reduction and profusion of blood output and can produce symptoms of lightheadedness, chest discomfort, weakness and shortness of breath. Dr. Daniell said that the frequency of the episodes of arrythmia should decide whether or not Roadarmel could return to work. If Roadarmel were having arrythmias which reduce blood flow sufficiently to

impair brain function or which impair his ability to perform, then he should not be operating heavy equipment where he could harm himself or other people. Dr. Daniell thought it very likely that Roadarmel had this arrythmic disorder prior to the onset of symptoms in September, 1986. This expert opinion does not relieve Royal of liability. The rule that the employer takes the employee as he finds him is well established. The fact that an employee was suffering from a pre-existing disease or disability does not preclude compensation if the disease or disability was aggravated or accelerated by an industrial injury which arose out of and in the course of employment. Gaffney v. Industrial Accident Board of Montana (1955), 129 Mont. 394, 287 P.2d 256.

Tim Adams, M.D. of Bozeman, advised the Workers' Compensation Division on November 20, 1986 that the arrythmia was work related.

Kenneth Kulig, M.D. of the Rocky Mountain Poison Center in Denver, Colorado, is a physician and toxicologist who examined Roadarmel. He testified that one cannot predict which patients exposed to Toluene will develop arrythmias, and that not all deliberate abusers (glue and spray paint sniffers) of Toluene develop arrythmias. Because of this fact, he said, one can conclude that some patients are more sensitive to the cardiac effects of Toluene than others. He testified further that if he were Roadarmel's employer he would be reluctant to re-expose him to Toluene to see if he develops another arrythmia. Dr. Kulig told of patients who were found unconscious or dead after Toluene abuse and said that it has to be assumed that the cause of death was cardiac arrythmia. Dr. Kulig believes that there is no medical reason why Roadarmel cannot go back to work; but, he believes that Roadarmel has a psychological reason for not going back to work. Roadarmel believes he may have a dizzy spell while

he's operating heavy equipment. But Dr. Kulig expressed the opinion that it does not really matter if the dizzy spell he fears has a physical cause or not. The result is the same--dizziness and possible fainting could occur.

James K. Vincent, M.D., a specialist in cardiovascular medicine in Billings, said that not only should Roadarmel avoid further exposure to Toluene but that from the information about the chemical everyone should avoid it.

As a consequence of our review of each physician's deposition and after a thorough reading of all evidence submitted, we agree with the Workers' Compensation Court that claimant Roadarmel has met his burden of proof by a preponderance of the evidence that there was a causal connection between his exposure to Toluene while operating the curing bridge and his subsequent cardiac arrythmias, dizziness, lightheadedness and fainting. This injury was a result of his employment with Acme Concrete Company.

As to whether or not Roadarmel is permanently totally disabled, the medical evidence and testimony presented by Roadarmel demonstrate that although the data sheet cautioned that the maximum time per day that a person should be exposed to Toluene was 8 hours, Roadarmel was exposed for 12 to 14 and sometimes 16 hours per day. As a result, he has become sensitized to Toluene. Dr. Daniell stated that Roadarmel must avoid exposure to degreasing agents, cleaning agents, paint, paint strippers, glues, adhesives, some plastics in the manufacturing phase, fiberglass construction and any other solvent. Some of the medical experts advise that he not operate heavy equipment because his physical symptoms may recur at anytime. His history of sudden onset of these symptoms could be fatal to him and those around him. For the foregoing reasons, all gleaned from the record, we reach the

same conclusion that the Workers' Compensation Court reached. Roadarmel is entitled to temporary total disability.

The final issue before this Court is whether the Workers' Compensation Court erred in determining that claimant's witness, Samuel J. Rogers, Ph.D. qualified as an expert witness over defendant's objection.

The statutory provision in effect at the time of Roadarmel's injury was § 39-71-2903, MCA, as follows:

> . . . the workers' compensation judge is not bound by common law and statutory rules of evidence.

Appellants arguments based on statutes governing the rules of evidence are not applicable to this cause. The Workers' Compensation Court could hear even hearsay testimony. Krause v. Sears Roebuck & Co. (1982), 197 Mont. 102, 641 P.2d 458.

The judgment of the Workers' Compensation Court is affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

- 12 -