No. 90-461

IN THE SUPREME COURT OF THE STATE OF MONTANA

1991

CORA S. LABER,

      Petitioner and Appellant,

  -vs-

SKAGGS ALPHA BETA, d/b/a
BUTTREY FOOD AND DRUG,

      Employer and Insurer,
         Defendant and Respondent.

FILED

FEB - 6 1991

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:    The Workers' Compensation Court,
              The Honorable Timothy Reardon, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

         Denise Ackerman, Attorney at Law, Billings, Montana

      For Respondent:

         Chris Mangen and Patricia Karrell; Crowley Law Firm,
         Billings, Montana

Submitted on Briefs:  December 21, 1990

Decided:  February 6, 1991

Filed:

Clerk

Justice John Conway Harrison delivered the Opinion of the Court.

This is an appeal from the Workers' Compensation Court of the State of Montana denying benefits. We affirm.

The following issues are presented by appellant:

1. Whether the Workers' Compensation Court erred in finding that appellant's industrial injury to her left little finger did not result in the aggravation of appellant's carpal tunnel syndrome.

2. Whether the Workers' Compensation Court erred in finding that appellant is not totally disabled as a result of appellant's February 6, 1987 industrial injury to her left little finger.

At the time of the accident, Mrs. Cora Laber, appellant, was 59 years old. Prior to the accident, Mrs. Laber worked in Buttery's bakery as a sales clerk, hand-wrapper, icer, and cake decorator. On February 6, 1987, while employed at Buttrey Food and Drug in Billings, Montana, Mrs. Laber suffered a compensable injury arising out of, and in the course of, her employment. Mrs. Laber testified that it was about closing time and she was in a hurry and after turning off the bread machine, she did not wait long enough for the motor to stop. As a result, the little finger on her left hand was caught in between moving parts of the machine and the end of her finger was partially crushed. The injury did not involve any other part of her body. On February 9, 1987, the finger was sutured and splinted at a hospital emergency room. The injury was slow healing and her primary treating physician, Dr. Jeffrey Hansen, fused the distal joint on April 15, 1987. Mrs. Laber was

2

to remain off work for four to six weeks and wear a splint at all times. On July 27, 1987, Dr. Hansen reported that Mrs. Laber was experiencing tingling of the extremity; yet, x-rays confirmed a good fusion and he released her to return to work. Dr. Hansen testified that Mrs. Laber had reached maximum healing as of July 27, 1987.

On August 3, 1987 Mrs. Laber returned to full time employment in the Buttrey bakery. Mrs. Laber worked for three weeks until the pain from her hand prevented her from continuing. Her last working day was August 24, 1987. She returned to see Dr. Hansen on August 25, 1987. During the August 25, 1987 examination, Dr. Hansen noted that Mrs. Laber had hand and finger numbness following repetitive use of the extremity and that the extremity had developed sensitivity to cold. Dr. Hansen also noted for the first time that Mrs. Laber had gradually developed carpal tunnel syndrome. Dr. Hansen performed surgery on Mrs. Laber's left wrist on September 9, 1987 to release the carpal tunnel syndrome. The surgical carpal tunnel release improved the numbness in Mrs. Laber's hand, and it decreased her tendency to drop things. However, the surgery did not relieve her sensitivity to cold nor did it improve her grip, and the pain, although temporarily relieved, grew worse. To date, Mrs. Laber has not returned to work.

Mrs. Laber received temporary total disability benefits from February 6, 1987, the date of her injury, until she resumed full time employment on August 3, 1987. When Mrs. Laber ceased working on August 24, 1987, she was returned to temporary total disability

3

benefits until they were terminated on two weeks notice in January of 1988. The record shows that Mrs. Laber has received $8,602.03 in biweekly benefits and the insurer has paid $5,941.90 in medical expenses, of which $1,450.57 were for medical expenses related to her carpal tunnel treatment. Following the termination of benefits, Mrs. Laber contended that the industrial injury to her little finger aggravated her carpal tunnel syndrome which rendered her totally disabled. Mrs. Laber contended that the temporary total benefits were improperly terminated and she petitioned the Workers' Compensation Court to resolve this dispute between herself and her employer, Buttrey Food and Drug of Billings. Following the trial of this matter on May 17, 1989, the hearing examiner determined that Mrs. Laber's carpal tunnel syndrome was not aggravated by her industrial injury and that Mrs. Laber would not be entitled to either temporary total or permanent total disability benefits as a result of her injury to her little finger. On June 7, 1989 the Workers' Compensation Court adopted the decision of the hearing examiner and entered its own Order and Judgment. Mrs. Laber now appeals this judgment.

Mrs. Laber's first assignment of error is with the Workers' Compensation Court's finding of fact that her industrial injury to her left little finger did not aggravate her carpal tunnel syndrome. Mrs. Laber contends that this finding is not supported by substantial credible evidence of the record.

The standard of review is clear. This Court will not substitute its judgment for that of the Workers' Compensation Court

4

where there is substantial credible evidence to support the court's findings of fact. Lakey v. Kerrian's (1987), 228 Mont. 139, 741 P.2d 416. As an additional safeguard, Rule 52(a), M.R.Civ.P., requires that findings of fact shall not be set aside unless clearly erroneous.

Both sides offered expert testimony to prove the extent of the industrial injury. The defendant offered deposition testimony of three physicians; Dr. William Shaw, who specializes in occupational medicine; Dr. Patrick Cahill, a neurologist; and Dr. James Schwarten, an orthopedic surgeon who has a particular interest in hand problems. Dr. William Shaw testified on behalf of the Yellowstone Valley Medical Evaluation Panel. The panel is comprised of Dr. James Schwarten; Dr. Williams, a neurologist; Dr. William Bredehoff, a psychologist; Dan Geiger, a vocational rehabilitation specialist; and Dr. Shaw, himself. Each panel member separately evaluated Mrs. Laber's hand problems. By deposition, Dr. Shaw testified as follows:

> We were aware that Dr. Hansen had stated quite explicitly that he felt that the carpal tunnel syndrome was indeed a consequence of the injury to the little finger, and that in his opinion this was a common occurrence. The panel members discussed among themselves whether any of us were aware of such correlation, and none of us were . . . . We could not say that it had never been reported . . . . But amongst the three doctors who deal with such things--namely, Dr. Schwarten, Dr. Williams, and myself, none of us had ever heard of such reports.

Dr. Hansen testified by deposition for Mrs. Laber as follows:

> Q. Okay. So that in your opinion, the carpal tunnel syndrome was nothing out of the ordinary for this type of injury?

5

A. [By Dr. Hansen] My feeling is that I would not necessarily expect someone who smashed their small finger to get carpal tunnel syndrome; that is, if I had 10 patients with that injury, I wouldn't expect them all to get carpel tunnel syndrome. But that kind of injury does cause swelling and edema of the hand. The patient is unable to make a fist, which is the only way you can pump the fluid out of the hand. And since they can't make a fist and there is a consequent edema in the hand, it could cause carpal tunnel syndrome. And, if the patient developed carpel tunnel syndrome or they had an exacerbation of a pre-existing carpal tunnel syndrome, that needed medical or surgical treatment, I would clearly attribute it to the injury to the small finger.

During cross, Dr. Hansen testified as follows:

Q. When you released her to return to work on August 3rd, 1987, had she reached maximum medical rehabilitation, in your opinion?

A. [By Dr. Hansen] Yes . . . I suppose she'd probably reached as much healing as she would reach, yes.

Q. Okay. At that point there wasn't really any swelling left in the left hand, was there?

A. Not visibly, no.

Q. And it was after a return to work and the repetitive use of her left hand that work involved that she reported to you carpal tunnel which was now at a level that was bothering her, correct?

A. That's correct.

Q. Well, isn't that repetitive use of the hand at least as likely a cause of the aggravation of the carpal tunnel as a now-fully-healed surgery?

A. Yes.

Then on redirect, Dr. Hansen said:

So any swelling or edema down the course of the tendon sheath, which would absolutely have to occur with a crushing injury of the finger, could contribute to a carpal tunnel syndrome. I'm not saying it necessarily does or doesn't. In fact, more commonly than not, it wouldn't, but it can contribute to it.

In short, Dr. Hansen testified that aggravation of Mrs. Laber's pre-existing carpal tunnel condition <u>possibly</u> resulted from her industrial injury to her left little finger. Dr. Hansen also agreed that such an injury would not be expected to result in a carpal tunnel syndrome. This conclusion was supported by the testimony of Dr. Cahill, Dr. Schwarten, and Dr. Shaw who testified to a reasonable degree of medical certainty that such an injury to one's little finger could not result in a carpal tunnel wrist problem.

As we noted in Bykonen v. Montana Power Co. (1985), 217 Mont. 169, 172, 703 P.2d 856, 858, our holding in Jones v. St. Regis Paper Co. (1981), 196 Mont. 138, 639 P.2d 1140, demonstrates that medical possibility evidence that an industrial accident or injury aggravated a pre-existing condition, may together with other evidence, establish a compensable disability. However, medical possibility evidence, in and of itself, does not necessarily extinguish claimant's burden to prove her case by a preponderance of the evidence. Taken as a whole, the evidence presented in this case does not establish a preponderance of evidence in favor of Mrs. Laber's claim that her carpel tunnel syndrome was aggravated by her February 1987 industrial injury. The Workers' Compensation Court carefully considered all the evidence and concluded that the evidence did not prove that Mrs. Laber's industrial injury either caused or aggravated her pre-existing carpal tunnel syndrome. We find no error. We therefore hold that there is substantial credible evidence to support this conclusion of the Workers'

7

Compensation Court.

Mrs. Laber next assigns error to the court's finding that she is not entitled to temporary total or permanent total disability benefits as a result of the industrial injury to her little finger. In determining benefits, the court only considered Mrs. Laber's disability which resulted from the industrial injury to her little finger, while essentially excluding any disability which was linked to her carpal tunnel syndrome. The Workers' Compensation Court found that Mrs. Laber was not entitled to temporary total disability benefits from August 3, 1987 until August 24, 1987, because Mrs. Laber had returned to full time employment during this period after her finger injury had achieved maximum healing on July 27, 1987. The court also denied Mrs. Laber permanent total disability benefits. Mrs. Laber claims that the industrial injury to her little finger aggravated a pre-existing carpal tunnel syndrome which, in turn, has rendered her totally disabled.

The court found that the Mrs. Laber's carpal tunnel symptoms did not result from her little finger injury on February 6, 1987. We have held that this finding is supported by substantial credible evidence contained in the record. Furthermore, Mrs. Laber has not alleged that her carpal tunnel syndrome was a new injury which arose as a result of her employment from August 3 through August 24, 1987. Thus, in determining Mrs. Laber's disability award, the court properly ignored any disability that was a result of her carpal tunnel syndrome and only considered the disability which resulted from the injury to the little finger of her non-dominant

8

left hand.

Temporary total disability is defined by § 39-71-116(19), MCA (1985), as "a condition resulting from an injury as defined in this chapter that results in total loss of wages and exists until the injured worker" reaches maximum healing; furthermore, "Disability shall be supported by a preponderance of medical evidence." Under this statutory scheme which was in effect at the time of Mrs. Laber's finger injury, temporary total disability did not exist past the time of maximum healing. Kimes v. Charlie's Family Dining & Donut Shop (1988), 233 Mont. 175, 178, 759 P.2d 986, 988-89. The record shows that Mrs. Laber's treating physician testified that Mrs. Laber's finger injury reached maximum healing as of July 27, 1987, whereafter, on August 3, 1987, when she returned to work on a full time basis. This evidence alone short circuits Mrs. Laber's claim for temporary total disability benefits for the period following maximum healing. We therefore conclude that the lower court was correct in denying Mrs. Laber temporary total disability benefits.

Next, to be entitled to permanent total disability benefits, claimant must meet the requirements of § 39-71-116(13), MCA (1985), which states as follows:

> (13) "permanent total disability" means a condition resulting in the loss of actual earnings or earning capability that exists after the injured worker is as far restored as the permanent character of the injuries will permit and which results in the worker having no reasonable prospect of finding regular employment of any kind in the normal labor market. Disability shall be supported by a preponderance of medical evidence.

In Spooner v. Action Sales, Inc., III Workers' Compensation Court Decisions No. 85 (January 24, 1983), the Workers' Compensation Court elaborated on this statutory definition by stating:

> To establish the existence of no reasonable prospect of employment in the normal labor market, a claimant must introduce substantial credible evidence of (1) what jobs constitute his normal labor market, and (2) a complete inability to perform the employment and duties associated with those jobs because of his work-related injury.

We adopted the Spooner approach in Metzger v. Chemetron Corp. (1984), 212 Mont. 351, 687 P.2d 1033.

The record reflects that the only vocational evidence in this case was presented by Buttrey's rehabilitation expert, Brenda Williams. Miss Williams reviewed the medical evidence, did an on-site job analysis, reviewed the deposition of Mrs. Laber, considered her physical limitations, and testified before the hearing examiner that Mrs. Laber could return to her employment at the Buttrey store as a head sales clerk, which would be a promotion. Miss Williams also testified that no decrease in earning capacity has resulted from Mr. Laber's finger injury. This testimony was not contradicted, refuted or disputed.

The medical evidence relating to Mrs. Laber's little finger injury was offered by Dr. Hansen as well as the physicians of the Yellowstone Medical Evaluation Panel. Excluding any symptoms attributable to her carpal tunnel syndrome, this medical evidence shows that Mrs. Laber's little finger injury has resulted in loss of flexion, which is an impediment to making both a tight fist and a strong grip. As a result, her grip strength of the left hand is

diminished by at least twenty percent and she continues to have cold intolerance. The evidence also shows that Mrs. Laber's little finger injury was maximally healed on July 27, 1987.

In order to be entitled to permanent total disability benefits, Mrs. Laber has the burden of proving that as a result of her February 6, 1987 injury she has a total loss of actual earnings or earning capacity, after reaching maximum healing; and she will have no reasonable prospect of finding regular employment of any kind in her normal labor market. The Workers' Compensation Court found that Mrs. Laber was not totally disabled as a result of her little finger injury, excluding any symptoms of her carpal tunnel syndrome. We have reviewed the record before us and hold that this finding is supported by substantial credible evidence. We agree that Mrs. Laber has not established by a preponderance of credible evidence that she has no reasonable prospect of finding regular employment of any kind in the normal labor market. Considering all the evidence of the record, Mrs. Laber has failed to support her requested finding of permanent total disability entitlement. The Workers' Compensation Court is hereby affirmed.

John Conway Harrison
Justice

11

We concur:

_____
Chief Justice

_____

_____

_____
Justices

12