No. 90-562

IN THE SUPREME COURT OF THE STATE OF MONTANA

1991

SAM R. HALL,

  Claimant and Appellant,

 -vs-

ATLANTIC RICHFIELD CO.,
(ARCO Aluminum),

  Employer,

 and

CIGNA INSURANCE COMPANY,

  Defendant, Insurer and Respondent.

APPEAL FROM: Workers' Compensation Court
      The Honorable Timothy Reardon, Judge presiding.

COUNSEL OF RECORD:

  For Appellant:

    John C. Doubek; Small, Hatch, Doubek & Pyfer,
    Helena, Montana

  For Respondent:

    Michael C. Prezeau; Garlington, Lohn & Robinson,
    Missoula, Montana

Submitted on Briefs: May 10, 1991

Decided: June 4, 1991

Filed:

_____
/ Clerk

Justice John Conway Harrison delivered the Opinion of the Court.

Sam R. Hall appeals from the judgment of the Montana Workers' Compensation Court entered September 7, 1990, denying him medical benefits, attorney's fees, costs, and penalties. We affirm.

Hall presents the following issues:

1. Does substantial evidence support the conclusion of the Workers' Compensation Court that Atlantic Richfield Co. (ARCO) is not responsible for Hall's medical bills?

2. Did the Workers' Compensation Court err by not finding claimant temporarily totally disabled or "presently" permanently totally disabled?

## Summary of Facts

Sam R. Hall, age 38, has a long history of injuries incurred while employed for several different companies and while engaged in other pursuits.

In 1973 Hall injured his back while operating a jack hammer for a construction company in the Seattle area and approximately a month afterward again injured his back and left shoulder in an automobile accident. Hall later worked for Boeing Company and was terminated from that job because of neck injuries sustained in a skiing accident which made lifting of heavy materials difficult. In 1978 Hall was examined by a physician who diagnosed lower back pain secondary to arthritis and chronic cervical spinal injuries. The doctor recommended an exercise program and stated that "no

restriction on his job is made."

Hall began working for ARCO and its predecessor, Anaconda Aluminum, on September 11, 1979. Hall alleges that he injured his lower back on three or more occasions while working for ARCO. On November 11, 1980, Hall injured his back when he struck a wire while running and was catapulted into the air, landing on his back. Hall filed no claim and received no benefits. Less than a month later, Hall went to a doctor about back pain, but did not attribute the pain to a particular event. On September 8, 1981, Hall injured his left arm when he accidentally struck an "I" beam at the aluminum plant.

Hall returned to work for Plum Creek Timber in 1982. On March 15, 1983, he sustained an on-the-job injury to his right knee which required surgery. Hall later received a $21,000 settlement for the knee injury. While employed by Plum Creek, Hall saw a doctor for a lower back injury incurred while he was lifting heavy logs.

Hall returned to work for ARCO in 1984 after having passed a Cybex test and a physical examination. On May 5, 1984, he injured his neck, shoulder, and middle back when he slipped backwards while raking a pot at the aluminum plant. A doctor who examined Hall said that he had pulled a trapezius muscle, an injury which does not usually cause permanent disability. About a year later, on July 14, 1985, Hall was thrown out of the seat of a sweeper, injuring his neck, shoulders, and back, and requiring stitches for a cut on his head. According to the Statement of Uncontested Facts

included in the findings of the Workers' Compensation Court, ARCO accepted liability for the May 5, 1984 and July 14, 1985 injuries and paid compensation and medical benefits relating to those claims. During his court testimony, Hall also claimed an injury to the left ankle in 1984 or 1985.

On September 15, 1985, Columbia Falls Aluminum Company (CFAC) purchased the ARCO aluminum plant. While employed by CFAC, Hall injured his neck and shoulders on October 17, 1985; his left elbow on October 8, 1986; and his right knee and back on December 11, 1986. Hall received a $50,000 settlement for the 1986 injuries. A claim is still pending for the injuries suffered in 1985.

The 1986 elbow injury resulted in acute avulsion fracture of the elbow with tendonitis. Another doctor diagnosed olecranon bursitis with no evidence of ulnar neuropathy. On December 9, 1986, the doctor recorded that the bursitis in Hall's elbow was resolving itself and released Hall to light-duty work.

In a letter dated December 18, 1986, Hall resigned from CFAC because of "problems I continue to experience with my elbow" and because "my knee also is aggravated by even normal use."

Since terminating his job at CFAC, Hall has not looked for employment. Hall acknowledged that he could be employed if he were willing to work for minimum wage.

According to his treating physician, John V. Stephens, M.D., with the exception of his left elbow injury, Hall had reached maximum healing.

4

Hall filed claims with ARCO's insurer for payment of accumulated medical bills, maintaining that he continued to suffer pain in his left elbow from the September 1981 accident at ARCO and pain in his cervical and lower back from several other injuries he incurred while working for ARCO. When ARCO's insurer refused to accept liability, Hall petitioned the Workers' Compensation Court to receive medical benefits from ARCO.

The Workers' Compensation Court concluded that Hall is not temporarily totally disabled and that medical evidence did not establish that Hall is disabled from injuries he sustained while working for ARCO. From this judgment, Hall appeals.

I

Does substantial evidence support the conclusion of the Workers' Compensation Court that ARCO is not responsible for Hall's medical bills?

Hall first alleges that testimony of Dr. Stephens, his treating physician since May 14, 1987, establishes that his right knee, left ankle, and back pain are attributable to injuries sustained while working for ARCO.

The well-established standard for review of a decision of the Workers' Compensation Court is whether substantial evidence supports the court's findings and conclusions. The Montana Supreme Court cannot substitute its judgment for that of the Workers' Compensation Court about the weight of the evidence and questions of fact, and this Court's function is not to determine whether

sufficient evidence supports contrary findings. O'Brien v. Central Feeds (1990), 241 Mont. 267, 271-72, 786 P.2d 1169, 1172. Where substantial evidence supports the conclusions of the Workers' Compensation Court, this Court cannot overturn the decision. Wood v. Consolidated Freightways, Inc. (Mont. 1991), 808 P.2d 502, 504, 48 St.Rep. 306, 306-307.

Hall had to prove by a preponderance of the evidence that his current disabilities were caused by injuries sustained during his employment with ARCO. Dumont v. Wickens Bros. Construction Co. (1979), 183 Mont. 190, 201, 598 P.2d 1099, 1106. Hall failed to meet his burden of showing that his current medical condition is attributable to injuries suffered while Hall was employed by ARCO.

The first record of a back injury was in 1973, several years before Hall began working for ARCO in 1979. Although Hall asserts that he hurt his back several times while working for ARCO, the record does not reveal serious back injuries to Hall because of accidents reported to ARCO. No dates or records exist of some of the claimed incidents resulting in back injuries. Hall did not miss prolonged periods of work at ARCO due to injuries. Subsequent to termination of his employment with ARCO in 1982, Hall suffered another injury to his lower back while lifting logs at his job with Plum Creek Timber. After he returned to employment with ARCO, Hall pulled a trapezius muscle which, according to medical evidence, would not have resulted in permanent damage. Finally, when resigning from CFAC, the company which bought the aluminum plant

6

from ARCO, Hall did not even mention back pain among his medical complaints in his letter of resignation.

Similarly, although Hall contends that his problems with his right knee stem from a 1984 accident at ARCO, the evidence shows that he injured his right knee initially in 1983 while working for Plum Creek Timber and received a $21,000 settlement. In 1986 Hall again injured his right knee while employed with CFAC and later collected a settlement for that injury.

Hall alleges that the Workers' Compensation Court ignored the testimony of Dr. Stephens who found it "medically probable that the right knee condition was aggravated upon return to work [with ARCO] in 1984 . . . because of the significant amounts of bending, lifting and being on concrete surfaces." Hall failed to present independent supporting evidence of injury to his right knee while he was employed with ARCO.

As for the injury to the right ankle, Hall was unable to recall the day or year of the injury. He testified that he did not miss work because of this injury and did not remember filing a claim for the ankle injury.

As stated by the Workers' Compensation Court, "[t]he problem with this case is that while claimant alleges that he sustained a number of injuries while employed by ARCO, he rarely missed more than a few days of work and he rarely reported the alleged injuries to his employer or his physician." Hall failed to present sufficient evidence to demonstrate that his current medical

condition can be ascribed to injuries which occurred during his employment with ARCO.

Hall next asserts that medical benefits payable to an injured worker are additional, separate, and apart from workers' compensation benefits and that ARCO accepted liability for Hall's medical bills when it accepted liability for his injuries of May 5, 1984 and July 14, 1985. According to the court's Statement of Uncontested Facts, the compensation and medical benefits for the May 5, 1984 and July 14, 1985 injuries have been paid.

Hall further argues that ARCO has not paid medical bills for other injuries sustained while employed at ARCO. As we have already determined, ARCO is not liable for Hall's current medical condition, and Hall is not entitled to medical benefits.

We hold that sufficient evidence supported the conclusion of the Workers' Compensation Court that Hall failed to demonstrate by a preponderance of the evidence that his current medical condition is attributable to employment with ARCO.


II

Did the Workers' Compensation Court err by not finding claimant temporarily totally disabled or "presently" permanently totally disabled?

We need not discuss this issue since we have upheld the judgment of the Workers' Compensation Court that Hall's medical condition did not result from an injury sustained while working for

8

ARCO.

Affirmed.

_____
                        Justice

We concur:

_____

_____

_____

_____
        Justices

9