No. 92-140

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993


PAMELA J. HOUTS,

      Claimant/Petitioner/Respondent,

  v.

KARE-MOR, INC., d/b/a BUTTE PARK ROYAL CONVALESCENT CENTER,
and HORIZON HEALTHCARE CORP., d/b/a BUTTE PARK ROYAL
CONVALESCENT CENTER, and STATE COMPENSATION MUTUAL INSURANCE FUND,

      Employer/Defendant/Respondent,

  and

HORIZON HEALTHCARE CORP., d/b/a BUTTE PARK ROYAL CONVALESCENT
CENTER, and GENERAL INSURANCE COMPANY OF AMERICA,

      Employer/Defendant/Appellant.


APPEAL FROM:  The Workers' Compensation Court
              The Honorable Timothy W. Reardon, Judge presiding.


COUNSEL OF RECORD:

      For Appellant:

          Geoffrey R. Keller, Matovich, Addy & Keller,
          Billings, Montana (General Insurance)

      For Respondent:

          R. Lewis Brown, Attorney at Law, Butte, Montana
          (Houts); Michael McCarter, Hughes, Kellner,
          Sullivan & Alke, Helena, Montana (State Fund)

FILED

FEB 19 1993

Filed:
Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

Submitted on Briefs:  October 22, 1992

Decided:  February 19, 1993

_____
                    Clerk

Justice William E. Hunt, Sr., delivered the opinion of the Court.

Appellant General Insurance Company of America appeals a decision of the Workers' Compensation Court finding that respondent Pamela J. Houts' current medical condition, resulting from surgery on April 11, 1988, stemmed from her April 4, 1988, industrial injury.

We affirm.

General Insurance presents two issues for review. Houts believes that the two issues can be combined into one. We will review the following issues:

1. Is there substantial evidence to support the Workers' Compensation Court's Findings of Fact and Conclusions of Law?

2. Did the Workers' Compensation Court err in finding that General Insurance unconditionally accepted liability for Houts' April 4, 1988, claim?

Pamela J. Houts worked as a nurse's aide at Butte Park Royal Convalescent Center from September 4, 1984, until her employment was terminated on October 27, 1988. During that period, she reported six workers' compensation injuries. The insurer, the State Fund, accepted claims for four injuries occurring from 1985 through 1987. General Insurance was the insurer for two injuries that occurred in 1988.

Houts' first industrial injury occurred on October 7, 1985. She suffered an inguinal hernia while lifting a patient. She filed a claim and received temporary total disability benefits from the State Fund. The hernia was repaired by surgery on November 11,

1986, after which she received temporary total disability benefits. On January 15, 1987, she returned to work without restrictions as a nurses' aide.

On March 22, 1986, Houts sprained her lower back while putting a patient to bed. She filed her claim and received temporary total disability benefits until April 4, 1986, when she returned to work.

On April 22, 1987, Houts injured her lower side abdomen while lifting patients. Her condition was diagnosed as nerve entrapment for which she had surgery on May 12, 1987. At the time of trial, the State Fund was still paying her temporary total disability benefits attributable to this injury.

Houts' fourth industrial injury occurred on December 24, 1987, when she was lifting a patient into a wheelchair and she felt a pain on her left side. Houts reported the accident and filed a claim which was accepted by the State Fund, but no medical expenses or wage loss was reported.

On April 4, 1988, Houts was injured when she was lifting a patient and felt a sharp pain in her left side. The insurer at this point was General Insurance. Houts was examined by Dr. John M. Gallus, her treating physician, who concluded that the problem was a continuation of her previous medical problems on her left side. Houts continued to experience discomfort and on April 7, 1988, Dr. Gallus referred her to Dr. R. E. Nehls in Butte who was board certified in obstetrics and gynecology. On April 11, 1988, Dr. Nehls performed a laparoscopic examination of her abdomen which revealed for the first time that her left tube

3

and ovary were attached to her abdominal wall by dense adhesions. Dr. Nehls decided to perform general surgery and remove the abnormal condition of the tube and left ovary. Following the surgery, Houts' abdominal pain was gone, however, she now had pain in the front area of her left thigh. She was then referred to Dr. W. T. Escober, a neurologist, for a neurological exam. Houts received temporary total disability benefits from April 18, 1988, through mid-August 1988, when she returned to work.

The last industrial injury Houts suffered occurred on October 26, 1988, when she was attempting to place a shirt on a patient and was punched in the stomach. No disability was alleged from the incident. Houts was terminated the following day when her supervisor told her that they had no light duty positions available for her.

A petition for hearing was filed on January 16, 1991, and was heard before the hearing examiner on September 4, 1991. On February 28, 1992, the Workers' Compensation Court adopted the hearing examiner's findings of fact and conclusions of law which stated that Houts' current symptoms arose from the April 11, 1988, surgery stemming from her April 4, 1988, claim. General Insurance appeals the decision of the Workers' Compensation Court.

I.

Is there substantial evidence to support the Workers' Compensation Court's Findings of Fact and Conclusions of Law?

Our standard of review in a workers' compensation case is that this Court will not substitute its judgment for that of the

4

Workers' Compensation Court where there is substantial evidence to support the court's findings of fact. Laber v. Skaggs Alpha Beta (1991), 247 Mont. 172, 805 P.2d 1375. Our responsibility is not to determine whether sufficient evidence supports a contrary finding. Hall v. Atlantic Richfield Co. (1991), 248 Mont. 484, 812 P.2d 1262. The claimant is required to prove by the preponderance of the evidence that her current disability was caused by an injury sustained on the job. Hall, 812 P.2d at 1264. Therefore, we will not overturn the Workers' Compensation Court unless its findings are not supported by substantial evidence.

In its conclusions of law, the Workers' Compensation Court determined that during the laparoscopic examination Dr. Nehls discovered that Houts' left ovary was attached to the abdominal wall and covered with dense adhesions. This abnormal condition would be aggravated by lifting and ovulation.

General Insurance contends that with these conclusions it is impossible to reconcile the Workers' Compensation Court's conclusion that the April 11, 1988, surgery to remove the adhesions, which were neither caused nor permanently aggravated by the April 4, 1988, lifting incident, was not a result of that injury. Houts counters that the cause of the adhesions is not the critical factor, but whether the lifting incident exacerbated the intermittently painful ovarian adhesions by producing the severe pain that caused her to seek medical assistance.

It is well established that an employer takes an employee as he finds him. Roadarmel, 772 P.2d at 1263. Although an employee

5

may be suffering from a pre-existing disease or disability, the condition does not preclude compensation if the disease or disability is aggravated or accelerated by an industrial injury arising out of or in the course of employment. Roadarmel, 772 P.2d at 1263.

We have stated that:

> [M]edical possibility evidence that an industrial accident or injury aggravated a pre-existing condition, may together with other evidence, establish a compensable disability. However, medical possibility evidence, in and of itself, does not necessarily extinguish claimant's burden to prove her case by a preponderance of the evidence.

Laber, 805 P.2d at 1378.

In this case, Dr. Nehls testified that any strain, including lifting, could cause tension in the adhesive process and cause some discomfort. Dr. Gallus testified that Houts' pain was exacerbated by her lifting at work. Dr. Gallus also stated that the adhesions can tear away with heavy lifting or exertion. He further stated that it was a real possibility that the adhesion tore away from the attachments and exacerbated Houts' condition.

The medical testimony raised the possibility that Houts' pre-existing condition was aggravated by the April 4, 1988, lifting injury. The medical possibility must be corroborated by independent evidence. Houts' testimony supports the doctors' contention that lifting and ovulation would aggravate the injury. At the hearing, she testified to the following:

> Q. Was that higher, as far as more towards your navel than the pain that you experienced in your groin area?

6

A. It was above the incision from the hernia, it was like up, moving up.

Q. So it was higher, more toward your navel?

A. Yes.

Q. Do you recall, if anything, what brought on that pain?

A. No, just from lifting and working, I'd be very painful down there. I mean it would be sore down there, but when I had my periods, it was worse.

The fact that Houts experienced pain in the exact location of the adhesion prior to, and on April 4, 1988, as well at the laparoscopic exam, further corroborates the doctors' testimony.

Dr. Nehls performed surgery to remove the ovary which caused Houts' pain. The surgery was successful but resulted in intermittent pain from Houts' left thigh to her knee. Doctors Charles E. Beuler, an orthopedic surgeon, and neurologist Gary Cooney, testified that her leg pain resulted from the April 11, 1988, surgery. A preponderance of the medical evidence establishes a causal relationship between Houts' present pain in her left thigh and the April 11 surgery resulting from the lifting injury. We hold that there is substantial evidence to support the Workers' Compensation Court's findings of fact and conclusions of law.

7

## II.

Did the Workers' Compensation Court err in finding that General Insurance unconditionally accepted liability for Houts' April 4, 1988, claim?

As previously stated, Houts has met her burden of proof that she sustained a compensable injury arising out of and in the course of her employment for which her employer and insurer are liable. Whether General Insurance accepted liability is immaterial because liability attaches as a matter of law. We hold that the Workers' Compensation Court did not err in finding that General Insurance accepted liability for Houts' injury.

We affirm.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

8