NO. 94-473

IN THE SUPREME COURT OF THE STATE OF MONTANA

1995

DALE WOOD,

      Petitioner and Appellant,

   v.

STATE COMPENSATION MUTUAL
INSURANCE FUND,

      Respondent and Insurer

   for

PIERCE'S DODGE CITY,

      Employer and Respondent.

FILED

AUG 25 1995

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   Workers' Compensation Court! The Honorable
               Mike McCarter, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

           Randall O. Skorheim, Skorheim Law Office,
           Great Falls, Montana

      For Respondent:

           William O. Bronson, James, Gray & McCafferty,
           Great Falls, Montana

                       Submitted on Briefs:  May 11, 1995

                               Decided: August 25, 1995

Filed:

                           Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

Dale Wood filed a petition for emergency hearing in the Workers' Compensation Court for the State of Montana in which he named the State Compensation Mutual Insurance Fund as a defendant and sought reinstatement of temporary disability benefits. After trial, the Judge of the Workers' Compensation Court found that Wood had sustained no disability for which he was currently entitled to benefits, and denied his petition. Wood appeals from the judgment entered pursuant to that finding. We affirm the judgment of the Workers' Compensation Court.

The only issue on appeal is whether there was substantial evidence to support the findings of the Workers' Compensation court.

In the pretrial order signed by the attorneys for the parties and the Judge of the Workers' Compensation Court, it was agreed that Wood injured his back during the course of and arising out of his employment with Pierce's Dodge City on July 29, 1992, and that at that time his employer was insured by the State Fund. The parties also agreed that Wood had suffered a previous injury to his back while working for the same employer on June 15, 1990; that he was released to return to work with a limitation on the amount that he could lift following that injury; and that his claim for benefits related to that injury was settled.

Wood contended in the pretrial order that his second injury on July 29, 1992, was either a new and different injury or a permanent

aggravation of his previous condition which disabled him from returning to his normal labor market and required extensive retraining. He claimed that during this necessary period of rehabilitation he was entitled to temporary total disability benefits retroactive to May 28, 1993. (Benefits had been paid temporarily by the State Fund from November 8, 1992, until sometime in May 1993.)

The State Fund contended that its decision to terminate payment of disability benefits to Wood in May 1993 was based on information it had received indicating that he had reached the point of maximum medical improvement, and that at that point his physical condition and the extent of his impairment was the same as it had been following recovery from his earlier injury. The State Fund contended that based on the best information it was able to gather, Wood's 1992 injury was in the nature of a temporary aggravation of a pre-existing injury from which there was no permanent effect. Therefore, it was the State Fund's contention that claimant was not entitled to further disability benefits as a result of his second injury. In particular, the State Fund relied on § 39-71-703(5), MCA (1991), which provides that:

> If a worker suffers a subsequent compensable injury or injuries to the same part of the body, the award payable for the subsequent injury may not duplicate any amounts paid for the previous injury or injuries.

At trial, Wood testified in person. Deposition testimony was offered from Wood's treating physicians, Dr. Michael Luckett and Dr. Patrick E. Galvas.

Wood testified that following his first injury he experienced pain in his back and left leg, but that his pain was limited to the left side. He stated that after settling his claim in 1991 he returned to work and described the activities he was able to perform.

According to Wood's testimony, on July 29, 1992, while trying to push an engine onto a pallet, he experienced pain on the right side of his low back and in his right leg. He was first treated for that injury by Dr. Luckett, an orthopedic surgeon, who then referred him to Dr. Galvas, a specialist in physical medicine and rehabilitation. He testified that following recovery from his second injury, his physical activities were more restricted than they had been following recovery from his first injury. However, he acknowledged that after being released to return to work following his first injury, he was advised that his condition could get worse and that he had been limited to light duty work as a result of that injury.

The Workers' Compensation Court found that Dr. Luckett's diagnosis of the anatomical explanation for Wood's complaints was the same following both the first and second injury, and that, in spite of Dr. Galvas's contrary opinion, both doctors' diagnoses related to nonspecific sources of pain in the low back. The court was not persuaded that Dr. Galvas's testimony established that the second injury caused a new and different condition (myofascial pain syndrome) as opposed to the condition which was diagnosed by

4

Dr. Luckett (discogenic pathology). It found that his symptoms following the second injury were essentially the same as those following the first injury, and that his work restrictions were also essentially unchanged.

In balancing the testimony of Dr. Luckett against the conflicting testimony of Dr. Galvas, the court noted that Dr. Luckett had the advantage of having treated Wood following both injuries, but that Dr. Galvas saw him in only the late stages of recovery from his second injury. Furthermore, the court found that the fact that claimant had been given a 7 percent impairment rating by Dr. Luckett and a 17 percent impairment rating by Dr. Galvas was not determinative because Dr. Luckett used a different edition of the text used for evaluation and did not consider range of motion, which would have increased the percentage of physical impairment. The court found that although a functional capacity evaluation done in 1993 showed greater restrictions in several areas, those differences were not significant and that the test results were a subjective measurement since they were dependent on the claimant's reports of pain and the amount of effort that he produced.

Based on these findings, the Workers' Compensation Court found that Wood's 1992 injury was a temporary aggravation of his pre-existing condition, and that a preponderance of the evidence did not establish that the extent of his disability was materially different following that injury than it had been before. For these

*reasons*, the court concluded that Wood was not entitled to permanent disability benefits as a result of his 1992 injury.

On appeal, Wood contends that there was insufficient evidence to support the trial court's finding that his second injury was to the same part of his body as the first, and that the result of his second injury was a mere temporary aggravation. He concludes that because Dr. Galvas was his treating physician at the time of trial, and pursuant to our decision in *Snyder v. San Francisco Feed and Grain* (1987), 230 Mont. 16, 27, 748 P.2d 924, 931, his testimony was entitled to greater weight. He also contends that Dr. Luckett's testimony was suspect because it was based on a weaker foundation, it was more equivocal, and Dr. Luckett demonstrated his bias in a letter he wrote to the Great Falls Tribune which was critical of the workers' compensation system. Finally, he contends that the Workers' Compensation Court erred by considering Dr. Luckett's 1991 impairment rating because it was not based on the most recent Guide to Evaluation of Permanent Impairment, as required by § 39-71-711(b), MCA.

We do not understand the relevance of Wood's argument regarding Dr. Luckett's 1991 impairment rating. His position seems to be that if Dr. Luckett had used the proper Edition of the Guides to Evaluation of Permanent Impairment published by the American Medical Association, and had considered limited range of motion, as required by the Guide, that Dr. Luckett would have found a greater degree of impairment in 1991 than the 7 percent which was found.

However, the basis of Wood's claim in this case is that the degree of his impairment in 1993 is greater than it had been in 1991. Therefore, it is hard to fathom how a higher impairment rating in 1991 would have benefitted Wood's claim.

We will limit **OUT** consideration to whether there was substantial evidence to support the Workers' Compensation Court's decision.

We review findings of the Workers' Compensation Court to determine whether there is substantial evidence to support them. *Roadarmel v. Acme Concrete Co.*(1989), 237 Mont. 163, 168, 772 P.2d 1259, 1262. We have held that where medical testimony is offered by deposition, we are in as good a position as the Workers' Compensation Court to evaluate that testimony; *Roadarmel*, 772 P.2d at 1262, however, where the opinions expressed by medical witnesses are based on medical histories, and the persons who give those histories testify at trial, we have held that the Workers' Compensation Court's superior opportunity to evaluate the credibility of those witnesses must be considered when reviewing its decision. *McIntyre v. State Compensation Insurance Fund* (1991), 249 Mont. 63, 68, 813 P.2d 451, 454. Therefore, "this Court's review of the medical depositions must be overlayed onto an encompassing review of the Workers' Compensation Court's decision under the substantial credible evidence standard." McIntyre, 813 P.2d at 454.

Although we have held in *Snyder*, 748 P.2d at 931, that the testimony of claimant's treating physician is entitled to deference

7

when contradicted by testimony of other medical witnesses, both Dr. Luckett and Dr. Galvas were Wood's treating physicians. Therefore, the *Snyder* preference is inapplicable in this case.

Dr. Luckett testified that he is an orthopedic surgeon practicing in Great Falls who first saw Wood for treatment of a work-related back injury on June 25, 1990. He ultimately diagnosed degenerative disc disease in the lumbo-sacral area of Wood's back with back and lower extremity pain.

On April 23, 1991, he evaluated the degree of Wood's permanent physical impairment due to his first injury and arrived at a 7 percent impairment rating. He testified that he considered the guide of the American Medical Association, but that he did not strictly follow it, and in particular, did not consider limitations in Wood's range of motion which would have significantly increased the impairment rating.

On November 1, 1991, Dr. Luckett released Wood to return to work, but recommended that he lift no more than 25 to 30 pounds, and restricted him to light duty.

Dr. Luckett saw Wood following his second injury on August 4, 1992. After additional diagnostic tests, he saw no dramatic change anatomically, and arrived at the same diagnosis he had made previously. He testified that his findings have never been consistent and that he thought Wood had referred pain from several possible sources, including degenerative discs, facet joints, muscles, tendons, and ligaments. He concluded that there were

8

insufficient objective findings to state that Wood had sustained two different injuries on the two occasions in question.

Dr. Luckett testified that Wood's restrictions on his work activities were the same following recovery from his second injury as they had been following recovery from his first injury. He stated that while there were some differences indicated by the physical capacity exam performed on December 20, 1993, from the one done on April 9, 1991, he did not place much weight in the results because they simply reflect the subjective complaints of the patient.

Finally, Dr. Luckett testified that in his opinion, Wood's functional level was about the same following recovery from his second injury as it had been following recovery from his first injury.

While Dr. Luckett's hostility toward the workers' compensation system, and various aspects of American culture in general, is apparent from his testimony and his editorial work, this bias was simply one more factor for the trial court to consider in combination with Dr. Luckett's prolonged opportunity to observe Wood's physical condition after both injuries and its ability to consider the credibility of Wood himself.

We conclude, based on our review of the entire record, that there was substantial evidence to support the critical findings of the Workers' Compensation Court; there is nothing from our review of the medical depositions that leads us to believe that the trial

judge's resolution of the factual issues was incorrect; and, based upon the Workers' Compensation Court's findings and our decision in *Allen v. Treasure State Plumbing* (1990), 246 Mont. 105, 803 P.2d 644, the conclusions of the Workers' Compensation Court were correct.

For these reasons, we affirm the judgment of the Workers' Compensation Court.

Pursuant to Section I, Paragraph 3 (c), Montana Supreme Court 1988 Internal Operating Rules, this decision shall not be cited as precedent and shall be published by its filing as a public document with the Clerk of the Supreme Court and by a report of its result to Montana Law Week, State Reporter and West Publishing Company.

_____
J st ce

We concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

10

August 25, 1995

## CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail. prepaid, to the following named:

Randall 0. Skorheim
Skorheim Law Office
P.O. Box 401
Great Falls, MT 59403

William 0. Bronson
Attorney at Law
P.O. Box 2885
Great Falls, MT 59403

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: *D. Gallagher*
Deputy